

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00307-CR

**KENNY DALE JENKINS,**

                                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                            **Appellee**

**From the 13th District Court
Navarro County, Texas
Trial Court No. 31,259**

## MEMORANDUM OPINION

A jury found Kenny Jenkins guilty on all nine separate counts (as charged in a single indictment) of aggravated sexual assault and assessed punishment at life imprisonment on all nine counts.  The trial court ordered that all nine sentences run consecutively.  In his brief and supplemental brief (which we granted Jenkins leave to file), Jenkins asserts three issues.  We will affirm.

### Sufficiency of the Evidence

In both his original and supplemental briefs, Jenkins challenges the legal and

factual sufficiency of the evidence regarding the State's failure to prove venue in Navarro County on each offense, and for several of the counts, Jenkins alleges that the evidence is insufficient to prove that he was the perpetrator of the offenses.

When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Adelman v. State,* 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). Any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In a factual sufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d. 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). "The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact." *Johnson*, 23 S.W.3d at 7. The appellate court "does not indulge in inferences or confine its view to evidence favoring one side of the case. Rather, it looks at all the evidence on both sides and then makes a predominantly intuitive judgment. . . ." *Id.* (quoting William Powers and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence*," 69 TEXAS L.

REV. 515, 519 (1991)).  The nature of a factual sufficiency review authorizes an appellate court, although to a very limited degree, to act as the so-called "thirteenth juror" to review the factfinder's weighing of the evidence and disagree with the factfinder's determination.  *Watson*, 204 S.W.3d at 416-17.

The State has the burden to prove that venue is proper in the county where the trial is sought.  Proof of venue must be demonstrated by either direct or circumstantial evidence.  *Rangel v. State,* 199 S.W.3d 523, 537 (Tex. App.—Fort Worth 2006, pet. dism'd) (citing *Black v. State,* 645 S.W.2d 789, 790 (Tex. Crim. App. 1983)).

We addressed a venue sufficiency challenge in *Witt v. State*:

> Venue is not an element of the offense.  *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex. Crim. App. [Panel Op.] 1981); *State v. Blankenship*, 170 S.W.3d 676, 681 (Tex. App.—Austin 2005, pet. ref'd); *Henley v. State*, 98 S.W.3d 732, 734 (Tex. App.—Waco 2003, pet. ref'd).  Thus, it need be proved by only a preponderance of the evidence.  *See* TEX. CODE CRIM. PROC. ANN. art. 13.17 (Vernon 2005); *Murphy v. State*, 112 S.W.3d 592, 604 (Tex. Crim. App. 2003); *Fairfield*, 610 S.W.2d at 779; *Blankenship*, 170 S.W.3d at 681; *Sudds v. State*, 140 S.W.3d 813, 816 (Tex. App.—Houston [14th Dist.] 2004, no pet.).  An appellate court must presume that venue was proved unless it was challenged in the trial court or the record affirmatively shows the contrary.  TEX. R. APP. P. 44.2(c)(1); *Hernandez v. State*, 198 S.W.3d 257, 268 (Tex. App.—San Antonio 2006, pet. ref'd); *Blankenship*, 170 S.W.3d at 681; *Henley*, 98 S.W.3d at 734.
>
> In reviewing a challenge to proof of venue, we apply a modified version of the familiar *Jackson v. Virginia* standard for legal sufficiency.  Thus, we view all the evidence in the light most favorable to an affirmative venue finding and ask whether any rational trier of fact could have found by a preponderance of the evidence that venue was proved.  *See Duvall v. State*, 189 S.W.3d 828, 830 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *Vanschoyck v. State*, 189 S.W.3d 333, 336 (Tex. App.—Texarkana 2006, pet. ref'd); *Lemoine v. State*, 85 S.W.3d 385, 387 (Tex. App.—Corpus Christi 2002, pet. ref'd).  *But see Sudds*, 140 S.W.3d at 816 (venue will be upheld "if from the evidence the jury may reasonably conclude that the offense was committed in the county alleged" (quoting

> *Rippee v. State*, 384 S.W.2d 717, 718 (Tex. Crim. App. 1964))). Venue will be upheld if the record contains sufficient evidence to support an affirmative finding under any of the alternative venue provisions on which the jury was charged. *Murphy*, 112 S.W.3d at 605.

*Witt v. State*, 237 S.W.3d 394, 399 (Tex. App.—Waco 2007, pet. ref'd) (footnote omitted).

The State argues that venue in Navarro County was proved for all the charged offenses under article 13.15 of the Code of Criminal Procedure, which provides in part: "Sexual assault may be prosecuted in the county in which it is committed, in the county in which the victim is abducted, or in any county through or into which the victim is transported in the course of the abduction and sexual assault." TEX. CODE CRIM. PROC. ANN. art. 13.15 (Vernon 2005).

The victim in this case is M., Jenkins's biological daughter, who was first introduced to Jenkins when she was ten years old. She testified that soon after meeting him, he began to touch her inappropriately and then had her engage in frequent sex acts with him, including oral sex and simulated, if not actual, intercourse. Count 1 alleged that, on or about January 24, 2005, in Navarro County, Jenkins intentionally or knowingly caused the penetration of the mouth of M., a child younger than 14 and not Jenkins's spouse, by his sexual organ. M., who was fifteen at the time of trial, testified about an incident that occurred near Purdon, at the home of "Eric," a man whom Jenkins occasionally worked for, and Jenkins had her perform oral sex on him there while watching a pornographic movie. The trial court took judicial notice that Purdon was in Navarro County. Viewed in a light most favorable to an affirmative venue finding, a rational trier of fact could have found by a preponderance of the evidence

that venue was proper in Navarro County on Count 1.

Count 2 alleged that, on or about February 14, 2005, in Navarro County, Jenkins intentionally or knowingly caused the penetration of the mouth of M., a child younger than 14 and not Jenkins's spouse, by his sexual organ. Count 3 alleged that, on or about February 25, 2005, in Navarro County, Jenkins intentionally or knowingly caused the penetration of the female sexual organ of M., a child younger than 14 and not Jenkins's spouse, by his sexual organ. On Counts 2 and 3 (and on several other counts), in addition to challenging venue, Jenkins challenges his identity as the perpetrator. At the beginning of her testimony, M. identified Jenkins as her "dad," and throughout her testimony, when she referred to "he" as the person who committed the various sexual offenses against her, she obviously was referring to Jenkins. M.'s entire testimony clearly demonstrates that Jenkins was the person who committed all the charged offenses against her. Viewing the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found beyond a reasonable doubt that Jenkins committed all of the charged offenses of aggravated sexual assault. The evidence is legally sufficient. And considering all of the evidence in a neutral light, we find that the evidence is factually sufficient to support the jury's guilty findings. The proof of guilt is not so weak nor the conflicting evidence so strong as to render the jury's verdict clearly wrong and manifestly unjust.

M.'s testimony established that the two offenses charged in Counts 2 and 3 occurred on February 14: oral sex and an occasion that same day where Jenkins undressed M. and got on top of her. She said that it occurred in an "efficiency" by the

hospital where Jenkins lived. Her entire testimony reflects that all of the offenses occurred either in Jenkins's vehicle, in Purdon where Eric lived, or in one of the various places where Jenkins lived: the efficiency, in the Paragon hotel, at his ex-wife's house, or at his mother's house in Mesquite, which is in Dallas County. Obviously excepting for when Jenkins lived with his mother in Dallas County, M. said that, while Jenkins "moved all the time," "his house" "[w]ould have been in Corsicana." His ex-wife's house was in Corsicana. We agree with the State that by M.'s describing the February 14 offenses as occurring in the efficiency, and her stating that she was staying with her mother and Jenkins picked her up and took her to the efficiency, the offenses did not occur in Dallas County but in Navarro County. Viewing all of M.'s testimony in a light most favorable to an affirmative venue finding, a rational trier of fact could have found by a preponderance of the evidence that venue was proper in Navarro County on Counts 2 and 3.

Count 4 alleged that, on or about March 31, 2005, in Navarro County, Jenkins intentionally or knowingly caused the penetration of the mouth of M., a child younger than 14 and not Jenkins's spouse, by his sexual organ. M. said that she had oral sex with Jenkins in Navarro County in 2005, and she said with certainty that "one or more of those events" occurred in March of 2005. Viewed in a light most favorable to an affirmative venue finding, a rational trier of fact could have found by a preponderance of the evidence that venue was proper in Navarro County on Count 4.

Count 5 alleged that, on or about June 30, 2005, in Navarro County, Jenkins intentionally or knowingly caused the penetration of the mouth of M., a child younger

than 14 and not Jenkins's spouse, by his sexual organ. M. testified that she went to church camp in June 2005, and when she returned, she was with Jenkins at "his house" and oral sex occurred. Viewed in a light most favorable to an affirmative venue finding, a rational trier of fact could have found by a preponderance of the evidence that venue was proper in Navarro County on Count 5.

Count 6 alleged that, on or about August 21, 2005, in Navarro County, Jenkins intentionally or knowingly caused the penetration of the mouth of M., a child younger than 14 and not Jenkins's spouse, by his sexual organ. M. testified that in August, Jenkins picked her up at her mother's house in Corsicana and drove her to his mother's house in Mesquite, and on the way oral sex occurred. She was unable to say where they were geographically when the offense occurred. The State argues that venue in Navarro County was proved under article 13.15. We agree. *See* TEX. CODE CRIM. PROC. ANN. art. 13.15 ("Sexual assault may be prosecuted in … any county *through or into which the victim is transported* in the course of the abduction and sexual assault.") (emphasis added). Viewed in a light most favorable to an affirmative venue finding, a rational trier of fact could have found by a preponderance of the evidence that venue was proper in Navarro County on Count 6.

Count 7 alleged that, on or about August 31, 2005, in Navarro County, Jenkins intentionally or knowingly caused the penetration of the female sexual organ of M., a child younger than 14 and not Jenkins's spouse, by his sexual organ. The State posits that while M. did not testify to an act that specifically occurred on August 31, she testified that in 2005, oral sex occurred around thirty times. She also said that the act of

Jenkins v. State                                                                                     Page 7

Jenkins getting on top of her occurred about fifty times, and that some of those acts occurred at the house of his ex-wife "Mickey" in Corsicana. The indictment's "on or about" language allows the State to prove a date other than one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period. *See Sledge v. State,* 953 S.W.2d 253, 256 (Tex. Crim. App. 1997); *Shea v. State,* 167 S.W.3d 98, 104 (Tex. App.—Waco 2005, pet. ref'd). Taking into account the sheer number of offenses and the entire record, and viewing all the evidence in a light most favorable to an affirmative venue finding, a rational trier of fact could have found by a preponderance of the evidence that venue was proper in Navarro County on Count 7.

Count 8 alleged that, on or about October 31, 2005, in Navarro County, Jenkins intentionally or knowingly caused the penetration of the mouth of M., a child younger than 14 and not Jenkins's spouse, by his sexual organ. M. testified that a specific incident involving oral sex occurred on Halloween in 2004, not 2005. She also testified generally that one or more oral sex acts occurred in Corsicana in October of 2005. Viewing the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found beyond a reasonable doubt that Jenkins committed the offense of aggravated sexual assault as charged in Count 8. The evidence is legally sufficient. And considering all of the evidence in a neutral light, we find that the evidence is factually sufficient to support the jury's guilty finding on Count 8. The proof of guilt is not so weak nor the conflicting evidence so strong as to render the jury's verdict clearly wrong and manifestly unjust.

Count 9 alleged that, on or about November 15, 2005, in Navarro County, Jenkins intentionally or knowingly caused the penetration of the mouth of M., a child younger than 14 and not Jenkins's spouse, by his sexual organ. M. testified that Jenkins picked her up and took her to his mother's house in Mesquite for Thanksgiving of 2005 and that an act of oral sex occurred there. While the offense occurred in Dallas County, we agree with the State that venue in Navarro County was proved for Count 9. *See* TEX. CODE CRIM. PROC. ANN. art. 13.15 ("Sexual assault may be prosecuted in … any county *through or into which the victim is transported* in the course of the abduction and sexual assault.") (emphasis added). Viewed in a light most favorable to an affirmative venue finding, a rational trier of fact could have found by a preponderance of the evidence that venue was proper in Navarro County on Count 9.

We overrule Jenkins's first issue.

### Pretrial Motion to Quash Indicment

His second issue complains of the trial court's denial of his pretrial motion to quash the indictment. Because there is no record of the hearing on the motion to quash, we conduct a de novo review of the trial court's ruling. *See Moff v. State*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). Citing article 21.24, the motion to quash first complains that Counts 2 through 9 are defective because they add eight paragraphs that incorrectly charge eight different offenses, instead of eight different ways of committing the same offense. Article 21.24 provides:

**Joinder of certain offenses**

(a) Two or more offenses may be joined in a single indictment,

information, or complaint, with each offense stated in a separate count, if the offenses arise out of the same criminal episode, as defined in Chapter 3 of the Penal Code.

(b) A count may contain as many separate paragraphs charging the same offense as necessary, but no paragraph may charge more than one offense.

(c) A count is sufficient if any one of its paragraphs is sufficient. An indictment, information, or complaint is sufficient if any one of its counts is sufficient.

TEX. CODE CRIM. PROC. ANN. art. 21.24 (Vernon 2009).

The term "count" is used to charge a separate offense; a paragraph is a portion of a count and charges a method of committing an offense. *Tyson v. State,* 171 S.W.3d 172, 177 (Tex. App.—Fort Worth 2005, pet. ref'd). The motion to quash appears to confuse the concepts of "counts" and "paragraphs" in article 21.24 because that statute plainly allows for the joinder of multiple offenses, as was the case with Jenkins's indictment. Counts 2 through 9 do not charge Jenkins with committing the same offense in eight alternative ways.

The motion continues in that confusion by next complaining that Jenkins will be denied due process by submitting those eight counts disjunctively. But in this indictment, there were nine counts, each charging a separate offense, none of which were charged disjunctively.

The motion finally appears to complain that the offenses in Counts 2 through 9 did not arise out of the same transaction and are not properly joined. As noted above, article 21.24(a) allows for joinder of offenses if the offenses arise out of the same criminal episode. Penal Code section 3.02(a) provides that a "defendant may be

prosecuted in a single criminal action for all offenses arising out of the same criminal episode." TEX. PEN. CODE ANN. § 3.02(a) (Vernon 2003). Criminal episode "means the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances: … (2) the offenses are the repeated commission of the same or similar offenses." *Id.* § 3.01 (Vernon 2003). Because all of the counts involve the same child victim and the same two offenses, the indictment falls within the definition of criminal episode on its face.

The trial court did not err in denying Jenkins's motion to quash the indictment, and we overrule his second issue.

### Ineffective Assistance

The third issue asserts that Jenkins's trial counsel rendered ineffective assistance by not objecting to the nine life sentences as cruel and unusual punishment (*i.e.*, grossly disproportionate without comparing them to sentences in other jurisdictions) and to their cumulation. To prevail on an ineffective assistance of counsel claim, a defendant must first show that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see Mitchell v. State,* 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). It must also be shown that the deficient performance prejudiced the defendant. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. "This means that the appellant must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Mitchell,* 68 S.W.3d at 642. A "reasonable probability" is one sufficient to

undermine confidence in the outcome. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Mitchell*, 68 S.W.3d at 642.

The trial court had authority to cumulate, or "stack," Jenkins's nine life sentences for the offenses of aggravated sexual assault arising out of the same criminal episode under section 3.03(b)(2)(A) of the Penal Code. *See* TEX. PEN. CODE ANN. § 3.03(b)(2)(A) (Vernon Supp. 2008); *see also Barrow v. State,* 207 S.W.3d 377, 381-82 (Tex. Crim. App. 2006). In announcing his decision to cumulate the sentences, the trial court stated that his reason for doing so was "to diminish this defendant's chance of parole to the greatest extent possible."

> [A]side from a few specific instances where the range of punishment depends upon the determination of discrete facts, "[d]eciding what punishment to assess is a normative process, not intrinsically factbound." Indeed, we have described the jury's discretion to impose any punishment within the prescribed range as essentially "unfettered." Subject only to a very limited, "exceedingly rare," and somewhat amorphous Eighth Amendment gross-disproportionality review, a punishment that falls within the legislatively prescribed range, and that is based upon the jury's (or trial court's, in a bench trial) informed normative judgment, is unassailable on appeal. The same thing is true for the discretionary decision whether to cumulate sentences. The Legislature was not required to provide the option to cumulate sentences at all. That the Legislature did so provide, but then reserved the cumulation aspect of punishment for the judge rather than the jury, does not change its essentially normative, non-fact-bound character.

> The discretionary assessment of punishment within legislatively prescribed boundaries has long been ingrained and accepted in American jurisprudence. In *United States v. Booker,* the Supreme Court observed that it has "never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." Further, the Court went on to say, "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." We do not believe that the legislatively endowed, normative decision whether to

cumulate sentences exceeds that level of discretion that the Supreme Court has always recognized as consistent with due process. The Legislature has charged the trial court with the determination of whether to cumulate, and the trial court is free to make this determination so long as the individual sentences are not elevated beyond their respective statutory maximums.

*Barrow,* 207 S.W.3d at 381-82 (citations and footnotes omitted).

Because, as *Barrow* explains, the trial judge had full discretion to cumulate the nine life sentences, and based upon the trial judge's reason for cumulating the sentences, Jenkins cannot show a reasonable probability that, but for his trial counsel's failure to object to cumulation, the result would have been different.

Each of the nine counts of aggravated sexual assault, a first-degree felony, had a possible punishment range of imprisonment for life or for any term of not more than 99 years or less than 5 years. TEX. PEN. CODE ANN. § 12.32(a) (Vernon Supp. 2009). Jenkins was eligible for community supervision, but the jury assessed punishment on each count at life imprisonment.

Texas courts and the Fifth Circuit require a threshold determination that the sentence is grossly disproportionate to the crime before addressing the elements of the *Solem* test. *Willis v. State*, 192 S.W.3d 585 (Tex. App.—Tyler 2006, pet. ref'd) (citing *Solem v. Helm*, 463 U.S. 277, 292, 103 S.Ct. 3001, 3011, 77 L.Ed.2d 637 (1983) (proportionality of sentence is evaluated by considering (1) the offense's gravity and the penalty's harshness, (2) sentences imposed on other criminals in same jurisdiction, and (3) sentences imposed for commission of same crime in other jurisdictions)); *Dunn v. State,* 997 S.W.2d 885, 892 (Tex. App.—Waco 1999, pet. ref'd) (citing *McGruder v. Puckett*, 954

F.2d 313, 316 (5th Cir. 1992)). In determining whether a sentence is grossly disproportionate, we consider not only the present offense but also an accused's criminal history. *Buster v. State*, 144 S.W.3d 71, 81 (Tex. App.—Tyler 2004, no pet.) (citing *Davis v. State*, 119 S.W.3d 359, 363 (Tex. App.—Waco 2003, pet. ref'd)). The legislature has the power to define crimes and prescribe penalties. *Id.* Further, if the sentence falls within the limits prescribed by a valid statute, the punishment is not excessive, cruel, or unusual. *Id.*

Jenkins argues that the nine life sentences are cruel and unusual (*i.e.*, grossly disproportionate) because "[n]o weapon was used during the commission of the offense and no other injury occurred. No one was killed." The State argues that the victim was under 14 and was repeatedly sexually assaulted by her biological father. The State further points to evidence that Jenkins gave her alcohol and drugs, threatened and stalked her both physically and emotionally, and the victim suffers from post-traumatic stress disorder.

Jenkins has not met the requirement of a threshold determination that the sentences are grossly disproportionate to the crime. *Cf. Benton v. State,* 237 S.W.3d 400 (Tex. App.—Waco 2007, pet. ref'd) (conviction on two counts of aggravated sexual assault of disabled individual and sixty-year prison sentence on each count that trial court ordered to be served consecutively); *Reinhard v. State,* No. 10-04-00320-CR, 2005 WL 2787628 (Tex. App.—Waco Oct. 26, 2005, no pet.) (mem. op.) (not designated for publication) (conviction on one count of aggravated sexual assault of a child, and sentence of life imprisonment). Jenkins thus cannot show a reasonable probability that,

but for his trial counsel's failure to object to the life sentences as cruel and unusual punishment or to present evidence of punishments for similar crimes, the result would have been different.

We overrule Jenkins's third issue and, having overruled all of his issues, affirm the trial court's judgment.

REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
    (Chief Justice Gray concurs in the judgment to the extent it affirms the trial court's judgment. A separate opinion will not issue. He notes, however, that he does not rely on the portion of article 13.15 of the Code of Criminal Procedure allowing venue "in any county through or into which the victim is transported in the course of the abduction and sexual assault" because there is no suggestion that the victim was abducted.)
Affirmed
Opinion delivered and filed October 14, 2009
Do Not Publish
[CRPM]